UNITED STATES BANKRUPTCY COURT
FOR THE
DISTRICT OF MASSACHUSETTS

~~~~~~~~~~~~~~~~~~~~~~~~~
In re
**KELVIN YOUK-SEE,**                                             Chapter 13
    Debtor                                                    Case No. 09-22468-JNF
~~~~~~~~~~~~~~~~~~~~~~~~~

MEMORANDUM

## I. INTRODUCTION

The matter before the Court is "BAC Home Loans Servicing, L.P.'s Motion for Reconsideration of Order Granting United States Trustee's Motion for Entry of Order Authorizing the Examination of and Requiring the Production of Documents by BAC Home Loans Servicing, L.P. f/k/a Countrywide Home Loans pursuant to Fed. R. Bankr. P. 2004 and Motion to Quash Subpoena" (the "Motion for Reconsideration"). BAC Home Loans Servicing, L.P. ("BAC") filed its Motion for Reconsideration in response to the allowance of the United States trustee's "Motion for Entry of Order Authorizing the Examination of and Requiring the Production of Documents by BAC Home Loans Servicing LP f/k/a Countrywide Home Loans pursuant to Fed. R. Bankr. P. 2004" (the "Motion"). The United States trustee (the "UST") filed the Motion on February 10, 2011, seeking: 1) authority to issue a subpoena *duces tecum* compelling BAC to produce and to permit inspection and copying of documents identified in an attached exhibit;[1] and 2) an

---

[1] The UST requested the following documents:

    A. All Documents which relate to the Debtor and the Debtor's loan

1

order compelling BAC to appear for an examination, to be recorded verbatim by stenographic means, through one or more duly authorized representatives most familiar with the documents identified in the attached exhibit and the averments made by the UST with respect to the Chapter 13 case of Kelvin Youk-See (the "Debtor"). The Court granted the UST's Motion on February 14, 2011.

The UST responded to BAC's Motion for Reconsideration by filing a Response and Supporting Memorandum of Law in Opposition to the Motion for Reconsideration, and the parties have filed extensive briefs. The Court heard the matter on April 14, 2011, and the parties filed additional memoranda following the hearing.

## II. BACKGROUND

On December 28, 2009, the Debtor filed a voluntary petition for relief under Chapter 13. On the same date, the Debtor filed, *inter alia*, his Schedules, Statements of Financial Affairs and Form 22C with the Court. The Debtor, on Schedule D-Creditors Holding Secured Claims, indicated that BAC held an undersecured first mortgage against property

---

modification on the Property.
B. All Documents reflecting communications to or from the Debtor or his attorney.
C. All Documents which reflect BAC's loan modification procedures, including documents which indicate the process to obtain a signed loan modification, which were in place relative to the Debtor and the Property.
D. All Documents which set forth BAC's payment procedures for loans for which a modification has been approved, including the procedure for processing mortgage statements related to modified loans, relative to the Debtor and the Property.
E. All Documents which reflect the "internal procedures" which are followed as set forth in BAC's response [Docket No. 89] to the Debtor's motion requesting a signed copy of the loan modification.

located at 395 Washington Street, Somerville, Massachusetts (the "Property") in the amount of $342,804.00 with an unsecured portion of $31,944.00. On January 9, 2010, the Debtor filed a Chapter 13 plan through which he provided for payment of arrearages owed to BAC in the amount of $9,000 with respect to its mortgage on the Property. Approximately, three months later, on April 29, 2010, the Debtor filed an Amended Plan which provided for payment of arrearages owed to BAC in the amount of $13,501.60. The Debtor's Amended Plan included language in Section V, captioned "Other Provisions," providing that the Debtor would "file a Motion for Determination of Value and to Declare the First Mortgage Undersecured as It Pertains to the Property at 395 Washington Street, Somerville, MA 02143" and would seek an order "reducing the amount of the principal balance due to BAC Home Loans Servicing, LP to $250,000."

On June 1, 2010, BAC filed an Objection to Confirmation of Plan, referencing the language in Section V that pertained to its mortgage claim and stating that "the pre-petition arrearage under the Mortgage . . .[was] . . . $13,501.60 and that the total amount due under the Mortgage as of the date of the filing was $356,305.80." On June 16, 2010, the Court sustained BAC's Objection to Confirmation of Plan because the Debtor had failed to file a response to the Objection. The Court ordered the Debtor to file a further amended Chapter 13 plan.

On July 12, 2010, the Debtor filed a "Motion to Reconsider Court's Order of 6/16/10," as well as a "Motion for Determination of Value and [to] Declare the First Mortgage Undersecured and the Second Mortgage Wholly Unsecured as They Pertain to

3

the Property at 395 Washington Street, Somerville, MA" (the "Motion to Determine Value"). BAC filed a Response to the Debtor's Motion to Reconsider, and the Court scheduled the Debtor's Motion to Reconsider for August 12, 2010. The Court subsequently continued the hearing to October 7, 2010.

Prior to the October 7, 2010 hearing, on September 29, 2010, the Debtor filed an Emergency Motion for Order Approving Loan Modification Agreement. In the Motion, the Debtor, referring to the his spouse's bankruptcy case (Case No. 09-20873-JNF), stated: "The Debtors have been approved for a loan modification of their first mortgage with Lender. (See Attached Loan Modification Agreement.). The Lender requires that this Court approve the Modification Agreement." The Court approved the Emergency Motion for Order Approving Loan Modification on October 7, 2010 and ordered the Debtor to file an Amended Plan and Schedule J-Current Expenditures of Individual Debtor(s) within 30 days. Following the allowance of the Emergency Motion, the Debtor withdrew his Motion to Reconsider and his Motion to Determine Value.

Approximately one month after the October 7, 2010 hearing, on November 5, 2010, the Debtor filed, on an emergency basis, a Motion to Extend Time, seeking an additional 45 days to file an amended plan and an amended Schedule J. In his Motion to Extend Time, the Debtor stated that he had not received an executed loan modification and proof of recording and did not wish to amend his plan and remove the provision providing for the payment of mortgage arrears until he received the duly processed loan modification. On November 10, 2010, the Court granted the Motion to Extend Time and extended the time

4

for the filing of an amended plan and an amended Schedule J to December 28, 2010.

On December 28, 2010, the Debtor filed his Amended Plan and Amended Schedule J. Subsequently, on January 21, 2011, over three months after the Court granted the Emergency Motion for Order Approving Loan Modification Agreement, the Debtor filed a "Motion for Order Requiring BAC Home Loan Servicing to Provide Him with a Copy of Loan Modification Signed by BAC Home Loan Servicing" (the "Motion for Order"). In his Motion, the Debtor alleged that he had been unable to obtain a signed copy of the loan modification despite repeated requests coupled with copies of the Court's order approving the loan modification, even though he sent his requests "to several different departments at BAC as well as to BAC's attorney." The Debtor also alleged that BAC was sending statements reflecting the pre-modification monthly mortgage payment amount notwithstanding the approval of the loan modification. He also averred in his Motion for Order that "[w]ithout a copy of the Loan Modification signed by BAC, the Debtor is afraid that BAC will cancel the modification and attempt to foreclose on his property."

According to the UST, upon information and belief, the Debtor finally was provided a copy of the signed loan modification on or about January 26, 2011.[2]

**III. POSITIONS OF THE PARTIES**

    A. The United States Trustee

        1. The UST's Motion

---

[1] The Debtor withdrew the Motion for Order on January 28, 2011.

The UST, citing 28 U.S.C. § 586(a), represented that he is an official of the United States Department of Justice charged by statute with the duty to oversee and supervise the administration of bankruptcy cases and that Congress expressly gave the UST standing under 11 U.S.C. § 307 to raise and be heard on any issue under Title 11.³ The UST also represented that 28 U.S.C. § 586 contains additional authority for the UST, among other things, to (a) supervise the administration of cases under Title 11 and take such actions as

---

² *See* U. T. v. Price Waterhouse, 19 F.3d 138, 141 (3d Cir. 1994) (UST has standing to appeal decision of bankruptcy court granting application to employ accountant because UST "is given the same right to be heard as a party in interest, but retains the discretion to decide when a matter of concern to the proper administration of the bankruptcy laws should be raised."). *See also* Thompson v. Greenwood, 507 F.3d 416, 420 n.3 (6th Cir. 2007) (the UST is an interested party by statute, i.e., 11 U.S.C. § 307); U.S. Trustee v. McCormick, Barstow, Sheppard, Wayte & Carruth (In re Donovan Corp.), 215 F.3d 929, 930 (9th Cir. 2000) (UST has standing to appeal denial of motion for disgorgement of fees); U.S. Trustee v. Fishback (In re Glados, Inc.), 83 F.3d 1360, 1361 n.1 (11th Cir. 1996) (UST has standing under 11 U.S.C. § 307); U.S. Trustee v. Clark (In re Clark), 927 F.2d 793, 796 (4th Cir. 1991) (UST has standing to appeal denial of motion under 11 U.S.C. § 707(b)); In re Plaza de Diego Shopping Center, Inc., 911 F.2d 820, 826 (1st Cir. 1990) (holding that "the district court's order appointing [a Chapter 11 trustee] over the protest of the U.S. Trustee is a presently appealable final decision under [28 U.S.C.] § 1291 . . . The U.S. Trustee is . . . clearly entitled to the relief he requests. . . [because] . . . faces irreparable harm if relief is denied since 'an end-of-case appeal [would be] ineffectual [and would] leave legitimate interests unduly at risk.'"); Morgenstern v. Revco D.S., Inc. (In re Revco D.S., Inc.), 898 F.2d 498, 500 (6th Cir. 1990) ("Construing these sections of the Code in pari materia [11 U.S.C. §§ 307, 1109(a) and 1164], with reference to one another, we find that the use of limiting language in §§ 1109(a) and 1164 which was omitted from § 307 strongly suggests that Congress did not intend to limit the U.S. trustee's appellate standing."). The UST is not required to demonstrate any concrete, particularized injury under § 307 to assert standing. *See* United Artist Theater Co. v. Walton, 315 F.3d 217, 225 (3d Cir. 2003) ("U.S. Trustees are officers of the Department of Justice who protect the public interest by aiding bankruptcy judges in monitoring certain aspects of bankruptcy proceedings."). The U.S. Trustee may take necessary actions under § 307 to protect the public interest in the enforcement of federal bankruptcy law. *See* Clark, 927 F.2d at 796; Plaza de Diego, 911 F.2d at 824.

6

the UST deems necessary to prevent undue delay; and (b) perform such other duties consistent with Titles 11 and 28 as the Attorney General may prescribe, *see* 28 U.S.C. §§ 586(a)(3)(G) and 586(a)(5). Citing A-1 Trash Pickup, Inc. v. United States Trustee (In re A-1 Trash Pickup, Inc.), 802 F.2d 774, 776 (4th Cir. 1986), the UST stated that "[e]ven absent the congressional grant of standing to the U.S. Trustee under Section 307 of the Bankruptcy Code, the U.S. Trustee has standing to act where its actions advance the U.S. Trustee's interest in the administration of bankruptcy proceedings." Based upon the authorities cited, the UST concluded that he had standing to employ a Rule 2004 examination as it is, in his words, "the traditional means of discovery in bankruptcy."

The UST stated that, notwithstanding the approval of the loan modification, upon information and belief, BAC continued to send the Debtor mortgage statements reflecting the pre-modified amount of the mortgage loan and that it was unclear why the Debtor continued to receive mortgage statements reflecting a pre-modified amount after his loan modification was approved by the Court. The UST represented that investigations were underway in the Western Division of Texas where BAC has consistently tried to collect pre-modification mortgage payments and in the Central District of California where there also are investigations by the UST into cases where BAC entered into loan modifications, but failed to honor them by failing to reflect the modified figures in their proofs of claim. According to the UST, such issues directly relate to administration of this bankruptcy estate and the integrity of the bankruptcy system. Thus, the UST sought to ascertain whether the conduct of BAC in the Debtor's case deviated from the standards established by the

7

Bankruptcy Code, and whether its particular actions constitute an abuse of the bankruptcy system or its procedures, citing 28 U.S.C. § 528(3)(G); 11 U.S.C. § 307; and In re A-1 Trash Pickup, Inc., 802 F.2d at 775 (Congress intended the United States trustee to be an enforcer of bankruptcy laws).

    B. BAC Home Loans Servicing, L.P.

In its Motion for Reconsideration, BAC maintained that the UST failed to establish "good cause" for the issuance of a subpoena and the taking of a Rule 2004 examination, adding that the UST's document requests and examination topics far exceed the specific inquiries with respect to its loan modification procedures. It added that the UST's "broad requests are irrelevant and have no relationship to the Debtor's loan modification." BAC also stated that the UST's compliance with the Right to Financial Privacy Act of 1978, 12 U.S.C. § 3401, *et seq.*, is questionable and that the examination and production requests are inconvenient and unduly burdensome. BAC also complained that "the Motion is part of a coordinated effort by the UST at a national level, which, at the time of this filing, has resulted in more than 83 subpoenas, demand letters, and/or motions for examinations under Federal Rule of Bankruptcy Procedure 2004 directed at either BAC or Bank of America, N.A. calling for the simultaneous production of documents and witnesses in multiple locations."

BAC further maintained that the subpoena should be quashed because any witness who could be prepared for the examination would have to travel more than 100 miles from the person's place of employment in violation of Fed. R. Civ. P. 45(c)(3)(A)(ii) and Fed. R.

8

Bankr. P. 9016. It also argued that the issuance of a subpoena and the taking of Rule 2004 examinations exceed the UST's powers under 11 U.S.C. § 307 and 28 U.S.C. § 586 and that § 307, in particular, which contains language virtually identical to the grant of standing to the Securities and Exchange Commission in Chapter 11 cases, *see* 11 U.S.C. § 1109(a), does not confer any substantive power on the UST. BAC asserted that the UST is not a party in interest capable of seeking an examination under Rule 2004 and that the UST, unlike parties in interest, does not have a pecuniary interest in cases and functions only as an impartial administrator. In this regard, BAC argued that the Rule 2004 examination and the issuance of subpoenas usurps the role of the Chapter 13 trustee and that the UST failed to establish that either the Chapter 13 trustee or the Debtor is unable to adequately protect the interests of the Debtor, particularly as the Debtor withdrew his Motion for Order concerning the identical subject matter of the UST's inquiry.

     C. <u>Further Arguments of the Parties</u>

          1. UST

In a Response and Supporting Memorandum of Law in Opposition to BAC's Motion for Reconsideration, the UST asserted that he had, in fact, established good cause for the issuance of subpoenas and Rule 2004 examination.[4] According to the UST, good cause

---

[3] Rule 2004 provides in relevant part:

> The examination of any entity under this rule or of the debtor under § 343 of the Code may relate only to the acts, conduct, or property or to the liabilities and financial condition of the debtor, or to any matter which may affect the administration of the debtor's estate . . . In . . . an

9

exists because of questions about BAC's loan modification procedures, which the UST asserted may have caused the Debtor unnecessary and prejudicial delay and attorneys' fees in conjunction with his endeavor to obtain a signed copy of loan modification documents. The UST also stated that he had complied with the Right to Financial Privacy Act of 1978, to the extent it is applicable, and obtained the written consent of the Debtor and served signed releases on BAC on February 15, 2011.

The UST reiterated the argument that he had standing under 11 U.S.C. § 307, consistent with its legislative history;[5] cited numerous reported decisions, *see, e.g.*, In re Wilson, 413 B.R. 330 (Bankr. E.D. La. 2009); In re Countrywide Home Loans, Inc., 384 B.R.

---

> individual's debt adjustment case under chapter 13 case, . . . the examination may also relate to the operation of any business and the desirability of its continuance, the source of any money or property acquired or to be acquired by the debtor for purposes of consummating a plan and the consideration given or offered therefor, *and any other matter relevant to the case or to the formulation of a plan*.

Fed. R. Bankr. P. 2004(b) (emphasis supplied).

[3] In In re A-1 Trash Pickup, Inc., the United States Court of Appeals for the Fourth Circuit held that the UST is a party in interest for purposes of moving for conversion or dismissal under 11 U.S.C. § 1112(b) where the motion advances the UST's interest in administration of bankruptcy proceedings. It stated:

> The legislative history of the Bankruptcy Reform Act of 1978 indicates that Congress expected for United States trustees to oversee administration of bankruptcy cases and act as "watchdogs . . . prevent[ing] fraud, dishonesty, and overreaching in the bankruptcy arena." H.Rep. No. 989, 95th Cong., 2d Sess. 88, reprinted in 1978 U.S. Code Cong. & Ad. News 5787, 5963, 6049.

802 F.2d at 775

373 (Bankr. W.D. Pa. 2008), in support of his position, and attached copies of numerous unpublished decisions from several districts in which bankruptcy courts rejected the position BAC has advanced in the instant case, *see, e.g.*, In re Morris, No. 07-73592, slip op. (Bankr. W.D. Ark. March 1, 2010); In re Santiago, No. 10-17135, slip op. (Bankr. N.D. Ohio Feb. 11, 2010); In re Romas, No. 10-90007, slip op. (Bankr. D.S.C. Feb.3, 2011); and In re Luna, No. 10-mp-00101, slip op. (Bankr. C.D. Cal. Jan. 28, 2011). The UST argued that BAC misapprehends the role of the UST in that the UST is not an attorney for debtors, a representative of debtors' estates or an agent of creditors, stating that the UST is "a watchdog to protect the bankruptcy system from abuse and protect the public interest in a fair and effective bankruptcy process."

The UST also responded to BAC's argument made at the April 14, 2011 hearing, specifically that reconsideration is warranted because the issues surrounding the Debtor's loan modification are moot as BAC settled the Debtor's claim against it. The UST stated: "[i]f this argument is accepted, it will essentially provide BAC with a blank check to violate the bankruptcy laws, because whenever BAC is about to be sanctioned in any particular case it can settle with the Debtor and make the issue 'moot.'"

    2. BAC

In its Reply in Support of Motion for Reconsideration, BAC argued that the plain language of the Bankruptcy Code and the Federal Rules of Bankruptcy Procedure do not permit the UST to conduct a Rule 2004 examination because the UST is not a party in interest. It argued that 11 U.S.C. § 307 also does not grant the UST authority to conduct

a Rule 2004 examination and that the UST failed to establish good cause because of the high level of intrusiveness of the trustee's requests.

## IV. APPLICABLE LAW

Courts recognize that the permitted scope of a Rule 2004 examination is extremely broad. For example, in In re GHR Energy Corp., 33 B.R. 451 (Bankr. D. Mass.1983), the court stated:

> [T]he scope of a Rule 2004 examination is unfettered and broad. "In general, a large latitude of inquiry should be allowed in the examination of persons closely connected with the bankrupt in business dealings, or otherwise, for the purpose of discovering assets and unearthing frauds, upon any reasonable surmise that they have assets of the debtor . . . . The examination ... is of necessity to a considerable extent a fishing expedition."

Id. at 453 (citation omitted). *See also* In re N. Plaza LLC, 395 B.R. 113, 122 n. 9 (S.D. Cal. 2008) ("It is well established that the scope of a Rule 2004 examination is exceptionally broad and provides few of the proceural safeguards found in Federal Rule of Civil Procedure 26."); In re Texaco Inc., 79 B.R. 551, 553 (Bankr. S.D.N.Y. 1987) ("Rule 2004 affords a party in interest an opportunity to conduct a wide-ranging examination with respect to a debtor's financial affairs."). There are limits to the scope of a Rule 2004 examination, however, and the scope of the examination will be limited if the purpose is to abuse or harass. *See* Martin v. Schaap Moving Sys., Inc., 152 F.3d 919, 1998 WL 405966, at *2 (5th Cir. 1998) (unpublished table decision).

An entity contesting a Rule 2004 examination generally files a motion to quash or a motion for a protective order, which shifts the burden to the party seeking an

12

examination to show "good cause" for the examination to proceed. In <u>Matter of Wilcher</u>, 56 B.R. 428 (Bankr. N.D. Ill. 1985), the court explained, stating:

> Although a Rule 2004 examination may be ordered ex-parte, once a motion to quash a subpoena is made, the examiner bears the burden of proving that good cause exists for taking the requested discovery. This is so even though the ultimate burden of persuasion on a motion to quash a subpoena duces tecum as oppressive rests on the movant.

<u>Id.</u> at 434. The movant must show "'some reasonable basis to examine the material sought to be discovered . . . [and] that the requested documents are necessary to establish the movant's claim or that denial of production would cause undue hardship or injustice. . . .'" <u>Id.</u> "Good cause is established if the party in interest seeking the Rule 2004 examination has shown that such an examination is reasonably necessary for the protection of its legitimate interests." <u>In re Hammond</u>, 140 B.R. 197, 201 (S.D. Ohio 1992). The court in <u>In re Countrywide Home Loans, Inc.</u>, 384 B.R. 373 (Bankr. W.D. Pa. 2008), formulated the following test:

> [I]t is appropriate to apply the "good cause" standard in what may be termed a "sliding scale" manner or balancing test. That is to say, the level of good cause required to be established by the UST before she can obtain certain documents or pursue a certain line of inquiry in a Rule 2004 examination involving a creditor will vary depending on the potential intrusiveness involved. *See, e.g.*, <u>In re Fearn</u>, 96 B.R. 135, 138 (Bankr. S.D. Ohio 1989) (scope of Rule 2004 examination should not be so broad as to be more disruptive and costly to the party to be examined than beneficial to the party seeking discovery); <u>In re Express One International, Inc.</u>, 217 B.R. 215, 217 (Bankr. E.D. Tex.1998) (same); <u>In re Eagle–Picher Industries, Inc.</u>, 169 B.R. 130, 134 (Bankr. S.D. Ohio 1994) (same); <u>In re Texaco, Inc.</u>, 79 B.R. 551, 556 (Bankr.S.D.N.Y.1987) (same). *See also* <u>In re Hammond</u>, 140 B.R. 197, 201 (S.D. Ohio 1992) (court must balance the examiner's interests against the debtor's interest in avoiding the cost and burden of disclosure.)

384 B.R. at 393.  The court added:

> Under this standard inquiries that are tightly-focused on the creditor's relationship with a particular debtor will require a relatively low level of good cause because they represent a low level of intrusion into the creditor's business affairs and a low risk of abuse. Inquiries that seek far-reaching information on policies and procedures of general application in the creditor's operation will require a correspondingly higher showing of good cause because they are inherently more intrusive and present a greater potential for abuse. This initial burden on the UST to justify its Rule 2004 examination and the concomitant scope of the exam are necessarily interrelated concepts. Use of this sliding scale approach will provide the Court with the flexibility to analyze a Rule 2004 examination request by the UST on a case-by-case basis and tailor an acceptable scope when it is challenged by the creditor.

Id.

Whether "good cause" exists also turns on interpretation of 11 U.S.C. § 307, as well as 28 U.S.C. §§ 581 and 586.  Section 307 in pertinent part provides: "The United States trustee may raise and may appear and be heard on any issue in any case or proceeding under this title . . . ." 11 U.S.C. § 307.  The United States Court of Appeals for the Third Circuit has observed that " It is difficult to conceive of a statute that more clearly signifies Congress's intent to confer standing."  U.S. Trustee v. Columbia Gas Sys., Inc. (In re Columbia Gas Sys., Inc.), 33 F.3d 294, 296 (3d Cir. 1994).

With respect to 28 U.S.C. §§ 581 and 586, the U.S. Trustee Program was authorized with the enactment of the Bankruptcy Code in 1978 as a pilot program in the Department of Justice, see Bankruptcy Reform Act of 1978, Pub.L. No. 95-598, § 101, 92 Stat. 2549, 2651-57 (1978), and was expanded by the Bankruptcy Act of 1986. See Bankruptcy Judges, United States Trustees, and Family Farmer Bankruptcy Act of 1986, Pub.L. No. 99-554, §§

111-115, 201-230, 100 Stat. 3088, 3090-95, 3097-3103 (1986). According to the legislative history of § 581, its provisions are modeled after the provisions of 28 U.S.C. §§ 541-550 pertaining to United States attorneys. The legislative history provides in pertinent part the following:

> Under the proposed system, the bankruptcy judges will be handling only judicial matters in bankruptcy cases. The proposed United States trustees will be the repository of many of the administrative functions now performed by bankruptcy judges, and will serve as bankruptcy watch-dogs to prevent fraud, dishonesty, and overreaching in the bankruptcy area.

H.R. Rep. 95-595, 95th Cong., 1st Sess. 88 (1977). Moreover,

> The nature of the duties of the United States trustees makes them the administrative officers of the bankruptcy system. They will not concern themselves with the processing of disputes in bankruptcy cases through the courts, and will not become involved in the administration of the courts. Those functions will continue to reside in the Administrative Office of the United States Courts. The United States trustees will, however, be responsible for the day-to-day operations of the bankruptcy system. They will supervise trustees, assist them in the performance of their duties, oversee their actions, and see to it that the bankruptcy laws are properly executed. They will concern themselves with the administrative aspects of bankruptcy cases, and not with the judicial aspects. They will serve as enforcers of the bankruptcy laws by bringing proceedings in the bankruptcy courts in particular cases in which a particular action taken or proposed to be taken deviates from the standards established by the proposed bankruptcy code. In this sense, they operate much as the Securities and Exchange Commission operates under current chapter X of the Bankruptcy Act, protecting the public interest and ensuring that bankruptcy cases are conducted according to the law.

H.R. Rep. 95-595, 95th Cong., 1st Sess. 109 (1977).

Section 586, which sets forth the duties of the UST, provides in pertinent part the following:

15

(a) Each United States trustee, within the region for which such United States trustee is appointed, shall– . . .

    (3) supervise the administration of cases and trustees in cases under chapter 7, 11, 12, 13, or 15 of title 11 by, whenever the United States trustee considers it to be appropriate--

    (A)(i) reviewing, in accordance with procedural guidelines adopted by the Executive Office of the United States Trustee (which guidelines shall be applied uniformly by the United States trustee except when circumstances warrant different treatment), applications filed for compensation and reimbursement under section 330 of title 11; and

    (ii) filing with the court comments with respect to such application and, if the United States Trustee considers it to be appropriate, objections to such application; . . .

    (C) monitoring plans filed under chapters 12 and 13 of title 11 and filing with the court, in connection with hearings under sections 1224, 1229, 1324, and 1329 of such title, comments with respect to such plans;

    (F) notifying the appropriate United States attorney of matters which relate to the occurrence of any action which may constitute a crime under the laws of the United States and, on the request of the United States attorney, assisting the United States attorney in carrying out prosecutions based on such action;

    (G) monitoring the progress of cases under title 11 and taking such actions as the United States trustee deems to be appropriate to prevent undue delay in such progress; . . .

(5) perform the duties prescribed for the United States trustee under title 11 and this title, and such duties consistent with title 11 and this title as the Attorney General may prescribe; . . . .

28 U.S.C. § 586(a).

## V. DISCUSSION

Upon consideration of the 11 U.S.C. § 307 and 28 U.S.C. §§ 581 and 586, the legislative history of those provisions, the decisions cited by the parties, and the arguments made by counsel in their memorandum and at the hearing, the Court shall enter an order denying the Motion for Reconsideration in part. The Court shall quash the subpoena to the extent that one or more representatives of BAC would be required, as witnesses, to travel more than 100 miles from that person's place of employment in violation of Fed. R. Bankr. P. 45(c)(3)(A)(ii).

Except for that single limitation, the Court concludes that the UST has standing to conduct discovery pursuant to its Motion and has established "good cause." Notably, using the sliding scale standard articulated by the court in Countrywide Home Loans, Inc., the Court finds that the UST's discovery requests were tailored to the procedures for loan modifications "relative to the Debtor and the Property." Because the requests are focused on BAC's communications with the Debtor or Debtor's counsel, the scope of the discovery is neither intrusive or abusive. *See* In re Countrywide Home Loans, Inc., 384 B.R. at 393.

Additionally, the Court unequivocally rejects BAC's arguments that the Rule 2004 examination and document requests are beyond the UST's statutory powers. Recent decisions addressing the issue of the UST's authority are persuasive, and this Court adopts their reasoning. For example, in In re Michalski, No. 10-41401, __ B.R. __, 2011 WL 2084179 (Bankr. N.D. Ohio March 4, 2011), the court, relying upon, *inter alia,* In re Countrywide Home Loans, Inc., 348 B.R. 373 (Bankr.W.D. Pa. 2008), and In re Wilson, 413 B.R. 330

17

(Bankr. E.D. La. 2009), stated the following:

> The UST's standing and authorization to conduct Rule 2004 examinations and compel the production of documents were squarely addressed in In re Countrywide Home Loans, Inc., 384 B.R. 373 (Bankr. W.D. Pa.2008). In that case, the bankruptcy court overruled objections made by Countrywide Home Loans, Inc. ("Countrywide"), which were almost identical to the ones raised by Wells Fargo herein. Judge Thomas P. Agresti thoughtfully and thoroughly reviewed—and rejected—Countrywide's argument that the UST's powers were limited to those enumerated in Section 586. Section 586, which contains a non-exhaustive list of particularized UST duties, was enacted pursuant to the 1978 Bankruptcy Act, whereas the broad and generalized authorization for the UST to raise, appear and be heard on any issue, set forth in 11 U.S.C. § 307 ("Section 307"), was created by the 1986 Bankruptcy Act. Id. at 381. Applying (i) the principle that the text of a statute should not be read to make part of such statute superfluous or redundant, and (ii) the presumption that when Congress enacts a new statute it considers previous laws and passes the later law in harmony with the policy embodied in the earlier statute, Judge Agresti concluded, "the most natural and plain meaning of Section 307 is that of a grant of expanded power[,]" which was not delimited by Section 586. Id. at 384. "The Court thus has no difficulty concluding that the plain meaning of the power to 'raise' and to 'appear and be heard' as to any issue in any bankruptcy case or proceeding includes the ability to conduct examinations pursuant to Rule 2004 in the right circumstances." Id. Moreover, after finding that 11 U.S.C. § 1109(b) does not contain an exhaustive list of entities that may be parties in interest, Judge Agresti concluded that the UST was a party in interest because she has been charged to act as a "watchdog" to protect the integrity of the bankruptcy system. Id. at 386–87.

2011 WL 2084179 at * 4. This Court agrees with and adopts the decisions and reasoning set forth in Michalski, Countrywide, Wilson, and in numerous unpublished decisions, see, e.g., In re Luna, No. 10-mp-00101, Slip op. (Bankr. C.D. Cal. Jan. 28, 2011). In In re Luna, the court observed that the legislative history of § 307[6] supports the conclusion that the UST

---

[6] That legislative history provides in relevant part:

18

has standing to seek and obtain a Rule 2004 examination, stating "[t]he legislative history . . . makes it clear that the UST is not a party in interest, yet has standing to participate in a bankruptcy case to a similar extent as a party in interest." In re Luna, No. 10-mp-00101, Slip op. at 4-5. The court in Luna added: "the UST can be accorded 'party in interest' standing without being called a 'party in interest.'" Id. at 5.

The UST is charged to serve as a watchdog to protect the integrity of the bankruptcy system. That status compels the conclusion that Congress intended the UST to have the tools, including the ability to conduct Rule 2004 examinations and issue subpoenas, to carry out that duty. Without such authority, the UST's role as a watchdog would be circumscribed and toothless.

The Court reiterates its rejection of BAC's arguments as to the scope of the UST's discovery requests. To the extent that BAC refused to respond to the Debtor's reasonable requests for an executed copy of a Court-approved Loan Modification agreement, and

---

> The U.S. Trustee is given standing to raise, appear, and be heard on any issue in any case or proceeding under title 11, U.S. Code—except that the U.S. Trustee may not file a plan in a chapter 11 case. In this manner, the U.S. Trustee is given the same right to be heard as a party in interest, but retains the discretion to decide when a matter of concern to the proper administration of the bankruptcy laws should be raised. By not designating the U.S. Trustee as a party in interest, the legislation ensures that there is no confusion over the U.S. Trustee's role in a case. A party in interest normally has a pecuniary interest in a case; the U.S. Trustee has no pecuniary stake in any case, and functions only as an impartial administrator.

H. Rep. No. 99-764, at 27 (1986), *reprinted in* , 1986 U.S.C.C.A.N. 5227, 5240. *See* In re Luna, No. 10-mp-001010, Slip op. at 4.

continued to send the Debtor statements that did not reflect the amount due under the Loan Modification, the UST, in its watchdog role, is entitled to conduct discovery about BAC's procedures relative to the Debtor and the Property. The Court observes that it is not without irony that 111 days lapsed between the time the Debtor obtained Court approval of the Loan Modification and BAC produced an executed copy of that document, while BAC was able to seek reconsideration of the UST's Motion within 14 days, thereby complying with the requirements of Fed. R. Bankr. P. 9024. Additionally, the Court finds that BAC's mootness argument is without merit for the reasons advanced by the UST.

With respect to BAC's objection under Fed. R. Civ. P. 45(c)(3)(A)(ii) and Fed. R. Bankr. P. 9016, however, the Court grants BAC's Motion to Reconsider and quashes the subpoena to the extent the UST seeks to examine any witness in Boston, Massachusetts who lives more than 100 miles of Boston, Massachusetts.

## VI. CONCLUSION

For the foregoing reasons, the Court denies the Motion to Reconsider in part and grants the Motion in part.

By the Court,

*Joan N. Feeney*

Joan N. Feeney
United States Bankruptcy Judge

June 16, 2011